**Electronically Filed
Intermediate Court of Appeals
CAAP-11-0000374
30-APR-2013
08:09 AM**

NO. CAAP-11-0000374

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee, v.
JOHN N. AMIRAL, Defendant-Appellant

APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
'EWA DIVISION
(CASE NO. 1DTI-10-123021)

SUMMARY DISPOSITION ORDER
(By:  Fujise and Leonard, JJ.,
with Nakamura, C.J., dissenting)

Defendant-Appellant John N. Amiral (Amiral) appeals from the April 12, 2011 Judgment entered by the District Court of the First Circuit, 'Ewa Division (District Court).[1]

Judgment was entered in favor of the State as to Amiral's offense of Speeding, in violation of Hawaii Revised Statutes (HRS) § 291C-102(a)(1) (2007) arising from a notice of traffic infraction issued by Officer Zenas Ondayog (Officer Ondayog) to Amiral on July 26, 2010 for exceeding the speed limit.

On appeal, Amiral challenges the admission of the laser gun evidence and contends that the District Court erred in failing to sustain his objections as to lack of foundation and hearsay, where there was insufficient evidence of Officer

---

[1] The Honorable Philip M. Doi presided.

Ondayog's (1) personal knowledge of "whether these tests were the recommended manufacturer tests, or how the tests worked" or that the laser gun was properly maintained or calibrated; and (2) training; that is, whether it met the requirements of the manufacturer or his training, along with his experience, qualified him to operate the laser gun.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Amiral's point of error as follows.

Sufficient foundation for admission of the laser gun reading requires evidence: (1) "[t]hat the [l]aser [g]un [w]as [t]ested [a]ccording [t]o [m]anufacturer [r]ecommended [p]rocedures[,]" State v. Assaye, 121 Hawai'i 204, 210, 216 P.3d 1227, 1233 (2009) and (2) "whether the nature and extent of an officer's training in the operation of a laser gun meets the requirements indicated by the manufacturer[,]" Assaye, 121 Hawai'i at 215, 216 P.3d at 1238. The person proffering such foundational testimony should have personal knowledge of the manufacturer's recommendations for testing of the laser gun and of the laser gun testing according to said recommendations to overcome hearsay concerns, see Assaye, 121 Hawai'i at 213, 216 P.3d at 1236 (analyzing the police officer's testimony consistent with State v. Manewa, 115 Hawai'i 343, 354 167 P.3d 336, 347 (2007), where the "expert's 'personal knowledge' that was adduced through his testimony at trial was sufficient 'to establish that the GCMSs were in proper working condition'" (quoting Manewa, 115 Hawai'i at 354, 167 P.3d at 347)).

Officer Ondayog confirmed he received "a manual" of "instructions for operating and maintaining the LTI 20/20"; that he read those instructions; determined that "Laser Tech International[,]" "the manufacturer of the laser that [he had]" created those instructions. Officer Ondayog received training in operating the laser in January, 2002, and obtained a refresher course on November 4, 2010.

2

Officer Ondayog confirmed that he was trained according to the manufacturer's recommended procedures to test and operate the laser gun. According to Officer Ondayog, the instructions in the manual specified to test the LTI 20/20 to ensure it was working accurately and operating properly, and his training was based on those instructions from the manufacturer. Officer Ondayog described the four specified tests. Notwithstanding Amiral's contention that Officer Ondayog's training was deficient where he was unfamiliar with "the internal operation of the machine how it works", performing the four tests of the laser as stated in manufacturer's recommended procedures establishes sufficient training. Assaye, 121 Hawai'i at 212, 216 P.3d at 1235 ("'there was an established manufacturer's procedure that could be conducted by the user to ensure that the [device was] in working order according to the manufacturer's specifications.'") quoting Manewa 115 Hawai'i at 354, 167 P.3d at 347 and Manewa, 115 Hawai'i at 348, 167 P.3d at 341 (expert testified each morning a "routine check on [the device] to ensure that all the parameters are within the manufacturer specification" was conducted).

With regard to Officer Ondayog's experience in using the laser gun, the officer estimated he had used that laser gun on "hundreds of vehicles, maybe thousands."

Officer Ondayog confirmed that on the date in question he performed the four tests in accordance with LTI's recommended procedures prior to stopping Amiral. Based on the four tests, Officer Ondayog confirmed that "[e]verything was working, good working condition." Officer Ondayog also confirmed that he operated the laser in accordance with his training and the manufacturer's recommended procedure.

In light of the foregoing, Officer Ondayog's testimony was sufficient to establish that "the nature and extent of [Officer Ondayog's] training in the operation of a laser gun meets the requirements indicated by the manufacturer." Assaye, at 215, 216 P.3d at 1238. This situation differs from that in

3

State v. Gonzalez, 128 Hawaiʻi 314, 327, 288 P.3d 788, 801 (2012), where

> the record is silent as to what type of training is recommended by the manufacturer. Without a showing as to the manufacturer's recommendations, the court could not possibly have determined whether the training received by Officer Franks met "the requirements indicated by the manufacturer." [Assaye, 121 Hawaiʻi at 215, 216 P.3d at 1238.]

Officer Ondayog's testimony is also consistent with the personal knowledge of the chemist in Manewa, who testified that he tested the device and determined that "the parameters are within manufacturer's specification[s,]" upon which the Assaye court relied in stating that the "expert's 'personal knowledge' that was adduced through his testimony at trial was sufficient 'to establish that the GCMSs were in proper working condition.'" 121 Hawaiʻi at 213, 216 P.3d at 1236 quoting Manewa, at 354, 167 P.3d at 347.

While Officer Ondayog testified that he never had the gun maintained or calibrated by the manufacturer where evidence of the manufacturer's recommended procedures exists by means of the officer's personal knowledge of the contents of the manual reflecting those recommended procedures, Assaye finds no hearsay violation (see Assaye, 121 Hawaiʻi at 213-14, 216 P.3d at 1236-37 (in part quoting Manewa, at 354, 167 P.3d at 347, and in part citing cases from other jurisdictions that involved testing of the laser in accordance with procedures recommended by the manufacturer)). In the context of its calibration analysis, the Assaye court discussed evidence of accepted procedures and cited with approval cases from other jurisdictions that involved testing of the laser in accordance with procedures recommended by the manufacturer. Assaye, 121 Hawaiʻi at 213-14, 216 P.3d at 1236-37. The Assaye majority did not require any further showing of inspection and service by the manufacturer.

Consequently, reviewing the District Court's ruling on Amiral's objection as to foundation for abuse of discretion, Assaye, 121 Hawaiʻi at 210, 216 P.3d at 1233 in the light most

favorable to the prosecution, State v. Hicks, 113 Hawai'i 60, 69, 148 P.3d 493, 502 (2006) (quoting State v. Maldonado, 108 Hawai'i 436, 442, 121 P.3d 901, 907 (2005)), Amiral's contention that the District Court erred cannot be sustained.

Therefore,

IT IS HEREBY ORDERED THAT the Notice of Entry of Judgment and/or Order and Plea/Judgment, entered on April 12, 2011 in the District Court of the First Circuit, 'Ewa Division, is affirmed.

DATED:  Honolulu, Hawai'i, April 30, 2013.

On the briefs:

Kevin O'Grady,
for Defendant-Appellant.

Brian R. Vincent,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Plaintiff-Appellee.

Associate Judge

Associate Judge